IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

QANTUM COMMUNICATIONS,      )
CORPORATION, *et al.*,      )
                            )
      Plaintiffs,      )
                            )
v.                          )    CIVIL ACTION NO.  3:04cv190-C
                            )             WO
TIGER COMMUNICATIONS, INC., )
                            )
      Defendant.      )

**MEMORANDUM OPINION AND ORDER**

**INTRODUCTION**

In this action, Qantum Communications Corporation, Qantum of Auburn, LLC,

Qantum Acquisition Company, LLC, Qantum Holding, LLC, and Qantum of Auburn License

Company, LLC (collectively referred to as "Qantum"), claims that Tiger Communications,

Inc. intentionally interfered with business relations by hiring Qantum employees Stacey Linn,

Amelia Tuck Turner and Meghan Chenoweth-Jeffcoat.[1]   The court has jurisdiction of this

action pursuant to its diversity jurisdiction.  *See* 28 U.S.C. § 1332.  In addition, a federal

court sitting in diversity applies state substantive law and federal procedural law.  *See Erie*

*R. Co. v. Tompkins,* 304 U.S. 64 (1938).

Pursuant to 28 U.S.C. § 636(c)(1) and M.D. Ala. LR 73.1, the parties have consented

to the United States Magistrate Judge conducting all proceedings in this case and ordering

the entry of final judgment.  Now pending before the court is plaintiff Qantum's motion for

---

[1]  Mrs. Chenoweth-Jeffcoat married after she left her employment with Qantum.  For simplicity's
sake, the court will refer to her as Chenoweth.

partial summary judgment (doc. # 22) filed on August 10, 2005.  In this motion, Qantum asks the court to "enter partial summary judgment as to the liability of . . . [Tiger]." After careful review and consideration of the motion for partial summary judgment, the responses filed in support of and in opposition to the motion, and the evidentiary material filed in support of and in opposition to the motion, the court concludes that the motion for partial summary judgment is due to be denied.

## SUMMARY JUDGMENT STANDARD

Under FED. R. CIV. P. 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).[2]  The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the 'pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material

---

[2]  In *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986), the court stated:

"[Where the nonmoving party will bear the burden of proof at trial on a dispositive issue...Rule 56(e)...requires the nonmoving party to go beyond the pleadings and by...affidavits, or by the "depositions, answers to interrogatories, and admissions on file," designate  "specific facts showing that there is a genuine issue for trial. . . .We do not mean that the nonmoving party must produce evidence in a form that would be admissible at trial in order to avoid summary judgment...Rule 56(e) permits a proper summary judgment motion to be opposed by any of the kinds of evidentiary materials listed in Rule 56(c) except the mere pleadings themselves. . . .

*Id.* at 324.

2

fact." *Id.* at 323.

The movant may meet this burden by presenting evidence showing there is no dispute of material fact, or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Id.* at 322-324. If the movant succeeds in demonstrating the absence of a material issue of fact, the burden shifts to the non-movant to establish, with evidence beyond the pleadings, that a genuine issue material to the non-movant's case exists. *See Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115-17 (11th Cir. 1993); *see also* FED. R. CIV. P. 56(e). ("When a motion for summary judgment is made and supported ... an adverse party may not rest upon the mere allegations or denials of [his] pleading, but [his] response ... must set forth specific facts showing that there is a genuine issue for trial."). What is material is determined by the substantive law applicable to the case. *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248 (1986).

A dispute of material fact "is 'genuine' . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. The non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Ind. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, the non-movant must present "affirmative evidence" of material factual conflicts to defeat a properly supported motion for summary judgment. *Anderson*, 477 U.S. at 257. If the non-movant's response consists of nothing more than conclusory allegations, the court must enter summary judgment for the movant. *See Holifield v. Reno*, 115 F.3d 1555, 1564 n. 6

3

(11th Cir. 1997); *Harris v. Ostrout,* 65 F.3d 912 (11th Cir. 1995).

However, if there is a conflict in the evidence, "the [non-movant's] evidence is to be believed and all reasonable inferences must be drawn in his favor."  *Anderson*, 477 U.S. at 255; *Molina v. Merritt & Furman Ins. Agency*, 207 F.3d 1351, 1356 (11th Cir. 2000).  After the nonmoving party has responded to the motion for summary judgment, the court must grant summary judgment if there remains no genuine issue of material fact and the moving party is entitled to judgment as a matter of law  FED. R. CIV. P. 56(c).  With these principles of law in mind, the court will determine now whether summary judgment is appropriate and should be granted.

## FACTS[3]

Qantum owns and operates several radio stations in the Auburn/Opelika area in Alabama.  Linn, Chenoweth and Turner were salespersons for Qantum, selling advertising on Qantum's radio stations.  All three women signed non-compete agreements in which they agreed to

> not, either directly or indirectly, either on his/her own behalf or own behalf of another business, engage in the following activities, or assist others in such activities, anywhere in Root's Market Area:
>
> a)  hire, recruit, or attempt to recruit, for any radio station, any person employed by Root at any time during the previous twelve (12) months;
>
> b)  solicit or accept any radio advertising business from any of Root's current, former or prospective accounts (a prospective account is defined as any entity Root has actively solicited,

[3] On a motion for summary judgment the court must construe the facts in the light most favorable to the non-movant, the defendant in this case.  *See, e.g. Brown v. Crawford*, 906 F.2d 667 (11th Cir. 1990).

4

planned to solicit, or sold advertising time to during the twelve (12) months before Employee's termination of employment with Root); or

c)    enter into, engage in, be employed by, be connected to or consult for any radio station business within Root's Market Area.

The market area at stake is defined in the non-compete agreements as a 75-mile radius, and the non-compete agreements restrict employment for periods of six-months.

In December 2003, Chenoweth resigned her employment with Qantum and, on January 5, 2004, began work as a sales associate with Tiger. Linn left her employment with Qantum in January 2004, and began work for Tiger on January 12, 2004. Turner resigned her position with Qantum on February 27, 2004, and began work for Tiger on March 1, 2004.

## DISCUSSION

Alabama recognizes a tort of intentional interference with business relations. *See Gross v. Lowder Realty Better Homes & Gardens*, 494 So. 2d 590 (Ala. 1986).

We hold that this tort of intentional interference with business or contractual relations, to be actionable, requires:

(1) The existence of a contract or business relation;
(2) Defendant's knowledge of the contract or business relation;
(3) Intentional interference by the defendant with the contract or business relation;
(4) Absence of justification for the defendant's interference; and
(5) Damage to the plaintiff as a result of defendant's interference.

*Gross*, 494 So. 2d at 597 (footnotes omitted). *See also Soap Co. v. Ecolab, Inc.*, 646 So. 2d 1366, 1371 (Ala. 1994).

Qantum asserts that Tiger hired Chenoweth, Linn and Turner with knowledge of and

5

in violation of their non-compete agreements.  Tiger, on the other hand, presents evidence showing that although it knew the women were employed by Qantum, it had no knowledge at the time it hired the women that they had signed non-compete agreements.  *See Defco, Inc. Decatur Cylinder, Inc.*, 595 So. 2d 1329, 1331 (Ala. 1992) ("As the Court noted in *Dyson Conveyor* [*Maintenance, Inc. v. Young & Vann Supply Co.*, 529 So. 2d 212, 216 (Ala. 1988)], "*Kemper* allowed a claim where Cox lured a Kemper employee away, *knowing of the employee's covenant not to compete with Kemper.*")

In their affidavits, Chenoweth and Turner admit that they signed non-compete agreements with Root but believed that those agreements were no longer valid after Qantum acquired Root.[4]  Linn has no recollection of signing a non-compete agreement.  All three women admit telling Thomas Hayley, President of Tiger, that they did not have a non-compete agreement with Qantum during employment negotiations.  Taking Tiger's version of the facts as true, as the court is required to do at this juncture, a reasonable jury could conclude that Tiger did not have the requisite knowledge of the contract or business relation to constitute the tort of intentional interference. Consequently, the court concludes that there are genuine issues of fact regarding the extent and timing of Tiger's knowledge of the non-compete agreements.  The disputed issues preclude summary judgment.[5]

---

[4]  It is undisputed that Root was subsequently purchased by Qantum.  However, it is not at all clear whether the non-compete agreements are applicable to Qantum.  In addition, the parties dispute whether the non-compete agreements are valid and enforceable.

[5]In addition to the factual dispute, there is a substantial question of Alabama law about whether Qantum's position is legally sound at all.  *See Birmingham Television Corp. v. DeRamus*, 502 So. 2d 761 (Ala. Civ. App. 1986).  However, neither party raised this issue before the court.

## CONCLUSION

Accordingly, for the reasons as stated and for good cause, it is

ORDERED that Qantum's motion for partial summary judgment (doc. # 22) be and

is hereby DENIED.

Done this 1st day of September, 2005.


      /s/Charles S. Coody          
CHARLES S. COODY
CHIEF UNITED STATES MAGISTRATE JUDGE